IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES          :          CRIMINAL ACTION
                       :
        v.             :
                       :
ANTHONY A. BIONDI      :          NO. 05-418

MEMORANDUM

McLaughlin, J.                                March 31, 2014

        Anthony Biondi has filed a Motion to Vacate Judgment
of Honest Services Fraud and Income Tax Violation Convictions.
In 2006, Biondi pled guilty to one count of conspiracy to commit
honest services fraud, four counts of honest services mail
fraud, and two counts of filing a false federal income tax
return.  In Skilling v. United States, 561 U.S. 358 (2010), the
Supreme Court limited the range of conduct prohibited by the
honest services statute, and held that it criminalizes only
schemes involving bribes and kickbacks, not undisclosed self-
dealing.  On the basis of Skilling, Biondi now moves to have his
conviction for honest services fraud, as well as his convictions
for income tax violations, vacated by writ of error coram nobis.

        The Court finds that there is no legal basis to vacate
Biondi's income tax convictions.  Although it is clear to the
Court that Biondi has established that, in light of Skilling,
there was fundamental error in his honest services fraud
convictions, the Court cannot vacate those convictions either.

The Court must consider the other requirements for coram nobis relief, and Biondi has not established continuing consequences as a result of his honest services fraud convictions.  The petitioner's only asserted continuing consequence is that he is unable to obtain employment in the municipal management field. He has not, however, presented any evidence that shows he would be eligible for such employment if his honest services fraud convictions were vacated but his tax convictions remained.

The writ of error coram nobis is an ancient common-law remedy, the contours of which "have not been 'well defined.'" United States v. Denedo, 556 U.S. 904, 910 (2009) (quoting Bronson v. Schulten, 104 U.S. 410, 416 (1882)).  At common law, the writ was available to a court to correct technical errors of fact in a final judgment, such as an error in transcription or an error in the record.  The writ was limited to the same court where an action was commenced and where judgment was rendered. Id.

The Supreme Court first articulated the availability and scope of the writ of error coram nobis in United States v. Morgan, 346 U.S. 502 (1954).  In Morgan, the petitioner sought to vacate a conviction for which he had already served his sentence, on the basis that he had been deprived of counsel in violation of the Sixth Amendment.  The district court denied

relief, concluding that the petitioner was ineligible to file a petition under 28 U.S.C. § 2255 because he was no longer "in custody," and no other remedies were available to attack his conviction.  The Supreme Court disagreed, concluding that a writ of error coram nobis is available to a petitioner who is no longer "in custody" for purposes of § 2255, but who seeks collateral review of a conviction.[1]  Morgan, 346 U.S. at 511.  The Court explained that even after a sentence has been served, "the results of the conviction may persist.  Subsequent convictions may carry heavier penalties, civil rights may be affected."  Id. at 512-13.

In 2009, the Supreme Court provided its most recent pronouncement on the writ of error coram nobis.  In Denedo v. United States, 556 U.S. 904 (2009), the Court explained that the writ in its modern form "is broader than its common-law predecessor."  556 U.S. at 911.  The writ can be used to correct "a legal or factual error," so long as that error is fundamental.  Id. at 913.  The Court emphasized, however, that the writ remains an "extraordinary remedy," and should only be used where necessary "to achieve justice."  Id. at 911.

---

[1] The writ of error coram nobis is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C. § 1651(a).

3

The Court of Appeals for the Third Circuit has emphasized the stringent standard of review for coram nobis relief.  In view of the extraordinary nature of the writ, a court's jurisdiction to grant relief is of limited scope. United States v. Stoneman, 870 F.2d 102, 106 (3d Cir. 1989). Given the importance of finality in judgments, the standard for coram nobis is more stringent than that applicable on direct appeal, or even that applicable on review of a petition for habeas corpus relief under 28 U.S.C. § 2255.  Id.

In order to establish a right to coram nobis relief, therefore, a petitioner must satisfy several requirements. First, the petitioner must show that he is no longer "in custody" for purposes of 28 U.S.C. § 2255, but he continues to suffer from continuing consequences of the allegedly invalid conviction.  Stoneman, 870 F.2d at 105-06.  The petitioner must also show that "sound reasons" exist for failing to seek relief earlier, and no alternative remedies are available.  Denedo, 556 U.S. at 911; Stoneman, 870 F.2d at 106.

Finally, the petitioner must establish that the writ is needed to correct "fundamental error."  The error must be such as to "render the proceeding itself irregular and invalid," and it must go to the jurisdiction of the trial court. Stoneman, 870 F.2d at 106 (citations omitted).  Errors that

4

could be remedied by a new trial do not usually come within the writ.  Where a person is convicted and punished for conduct that is not a crime, such circumstances constitute the sort of fundamental error that may warrant coram nobis relief.  Id. at 105.

The Court will not vacate the income tax convictions. The defendant has presented no legal basis to do so.  There is no question that the conduct to which the defendant pled guilty to after a full and complete colloquy makes out a violation of the tax laws.  There is no basis whatsoever to vacate them.

The government does not appear to dispute that the theory of honest services fraud to which Biondi pled guilty is no longer valid after Skilling.  Because "an assertion that a conviction was based on conduct not covered by a criminal statute class is of 'fundamental character,'" the Court concludes that Biondi has established fundamental error.  United States v. Osser, 864 F.2d 1056, 1059 (3d Cir. 1988).

The Court must consider the other requirements for coram nobis relief, even where fundamental error exists.  Id. Biondi is no longer "in custody" for purposes of 28 U.S.C. §2255, so there is no alternative remedy.  The government does not dispute that a valid reason exists for Biondi's failure to seek relief earlier.  The question is whether he continues to

suffer from continuing consequences of the allegedly invalid conviction.  Stoneman, 870 F.2d at 105-06.

The circuit courts have adopted varying approaches to the collateral consequences requirement.  The Ninth Circuit, for instance, has concluded that collateral consequences flow from any criminal conviction.  See, e.g., Hirabayashi v. United States, 828 F.2d 591, 606 (9th Cir. 1988).

By contrast, the Seventh Circuit has limited coram nobis relief to situations where a petitioner is "suffering civil disabilities unique to criminal convictions," United States v. Keane, 852 F.2d 199 (7th Cir. 1988), and "where there is a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm t the petitioner." United States v. Craig, 907 F.2d 653, 658 (7th Cir. 1990).  The Seventh Circuit in Keane identified certain "disabilities that may warrant coram nobis relief, including "the loss of the right to vote, hold occupational licenses (included law licenses), and bear arms." Id. at 203.  The Seventh Circuit held that financial penalties and diminished reputation arising out of a conviction, however, are not sufficient to establish "continuing disabilities". Id.  The Seventh Circuit has also held that a petitioner's desire to obtain a desirable job was not a continuing disability.  Craig, 907 F.2d at 658.

6

The Court of Appeals for the Third Circuit has not articulated a precise standard for collateral consequences.[2]  At a minimum, a petitioner must establish something more than mere moral stigma or reputational harm arising from conviction. United States v. Cariola, 323 F.2d 180, 182 (3d Cir. 1963). Courts in this circuit have also held that purely speculative consequences do not warrant coram nobis relief. See United States v. Rankin, 1 F. Supp. 2d 445, 455 (E.D. Pa. 1998) (petitioner's assertion that vacating his convictions would result in readmission to the bar, reinstatement of licenses, and employment as union officer is speculative), aff'd, 185 F.3d 863 (Table) (3d Cir. 1999); United States v. Mazzella, 1993 WL 53571, at *2 (E.D. Pa. Mar. 1, 1993) (rejecting continuing consequences of inability to get a job in New York insurance law when hiring official has discretion); United States v. Loftus, 796 F. Supp. 815, 826-27 (M.D. Pa. 1992) (possibilities that

---

[2] In Osser, the Third Circuit outlined approaches adopted by different circuits, but did not adopt a particular test.  The Court expressed some skepticism, however, that collateral consequences could be satisfied based on the petitioner's having been denied a pension as consequence of his conviction.  The Court also expressly declined to decide whether the possibility of a heavier sentence in a future conviction constitutes a collateral consequence. Osser, 864 F.2d at 1059-60, 1060 n.3.

petitioner may be impeached as a witness or subjected to enhanced sentence are purely speculative).

Courts have, however, granted coram nobis relief where the petitioner produced evidence that certain consequences caused by a conviction would be lifted if the conviction were vacated.  See United States v. Panarella, 2011 WL 3273599, at *9-10 (E.D. Pa. Aug. 1, 2011) (petitioner produced statements from municipal and military officials indicating that petitioner's conviction bars his employment); Loftus, 796 F. Supp. at 828 (petitioner lost position solely because of erroneous mail fraud conviction, and submitted proof that he would be eligible for the position if conviction were vacated); Colino v. United States, 2012 WL 1198446, at *11 (C.D. Cal. Apr. 9, 2012) (petitioner submitted affidavit indicating that the outcome of the coram nobis proceeding would substantially affect her possibility of re-obtaining teaching credentials).

The defendant argues that his education and experience are in the field of municipal management that requires the unique skills and experience which he possesses.  He states that there are such positions available locally, but he is eliminated from consideration because of his conviction.  The movant is now driving a truck for a living.  The movant's only argument for

continuing consequences is that his conviction prevents him from obtaining employment in the municipal management field.

During oral argument, the Court explained to counsel for the movant that it could not vacate the income tax convictions and asked why those convictions would not present the same impediments to the defendant's gaining employment in municipal management.  1/24/14 Hearing Tr. 10:6-22.  Counsel stated that employers are sometimes willing to overlook an income tax problem, especially one as minimal as the defendant's, but will not overlook a conviction for honest services fraud.  Id. at 14:2-19.  That statement was not supported by any evidence.

Because the assertion that a municipal management employer might overlook Biondi's tax convictions but not his honest services fraud convictions appeared to be purely speculative, the Court ordered the movant to submit evidence that the movant would be considered for a municipal management position if his honest services fraud convictions were vacated and his tax convictions remained.  See 2/10/14 Order (Doc. No. 214).  In response, the movant provided several affidavits from persons familiar with municipal management employment practices. These affidavits asserted that Biondi would not be considered for a municipal management position so long as his honest

9

services fraud conviction appears on his record.  The affidavits did not address, however, whether Biondi would be considered for a position even though his tax convictions would not be vacated. To the contrary, the affidavits suggest that any conviction suggesting dishonesty would disqualify the movant from a position.

The Court allowed the movant one more opportunity to submit evidence that demonstrates that a municipality would consider a candidate with two felony convictions for filing false income tax returns for a municipal management position. See 3/3/14 Order (Doc. No. 216).  The movant did not provide any additional evidence in response.

There is no evidence, therefore, that the honest services fraud convictions are depriving Biondi of any right or opportunity that would otherwise be available to him.  The Court cannot conclude that vacating the movant's honest services fraud convictions would have any effect on Biondi's circumstances or the opportunities available to him.

An appropriate order shall issue separately.